William K. HARVEY, Acting Regional Director for the Twenty-sixth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

MARLENE INDUSTRIES CORPORATION, Respondent.

No. 79 Civ. 5254 (HFW).

United States District Court, S. D. New York.

Oct. 11, 1979.

N. L. R. B., New York City, for petitioner by John S. Irving, Gen. Counsel, Washington, D. C., Robert G. Levy, II, Atty.-In-Charge.

Sage, Gray, Todd & Sims, New York City, for respondent by Steven J. Glusband, New York City, of counsel.

Cornelius, Collins, Higgins & White, Nashville, Tenn. by Charles H. White, Nashville, Tenn., of counsel.

Ballon, Stoll & Itzler, New York City by Arthur L. Stoll, New York City, of counsel.

OPINION

WERKER, District Judge.

William K. Harvey, Acting Regional Director of Region Twenty-six of the National

**724**

Labor Relations Board (the "Board") has filed a petition on behalf of the Board for injunctive relief pursuant to section 10(j) of the National Labor Relations Act, as amended, 29 U.S.C. 160(j) (the "Act"), restraining respondent Marlene Industries Corporation ("Marlene") from distributing, transferring or otherwise disposing of the proceeds of a scheduled sale of its assets to Unishops, Inc. ("Unishops") pending a final determination by the Board of the merits of charges filed in 1976 and heard before Administrative Law Judge Benjamin B. Lipton on various dates between August 15, 1978 and January 9, 1979. The Administrative Law Judge issued his decision on August 7, 1979 and found that Marlene was and had been engaging in unfair labor practices within the meaning of section 8(a)(1) and (3) of the Act.

The protective order sought by the Board would operate against Marlene until the final disposition of the matters involved. In my opinion, a realistic estimate of the time which would be required, considering that these proceedings are on appeal to the Board and then subject to review by the Sixth Circuit Court of Appeals and possibly the Supreme Court, and assuming affirmance throughout, then back for a determination of the individual back pay claims of possibly 300 claimants, would be a minimum of five years and probably more. While this is no more than an educated guess, the history of this case reinforces this opinion, since the case was originally started in 1970 and has been hotly contested ever since.

The underlying controversy began on June 23, 1970 when a presser, Nelson Rushing, was discharged for insubordination at the plant of Decaturville Sportswear Co., a subsidiary of Marlene in Decaturville, Tennessee. A number of pressers refused to return to work because of the discharge of Rushing and were themselves discharged. Thereafter, picketing began at the Decaturville plant, and on or about July 15, 1970, the International Ladies Garment Workers Union (the "ILGWU") directed picketing to begin at other plants owned by Marlene at Westmoreland, Tennessee; Hartsville, Tennessee; Loris, South Carolina; Aynor, South Carolina; and Frisco City, Alabama.

On September 21, 1971, the Board petitioned the United States Court of Appeals for the Sixth Circuit to hold Marlene and its subsidiaries in contempt of a previous decree of the Court of Appeals, because of the discharge of Rushing, the discharge of the pressers, and the refusal by the various subsidiaries of Marlene to reinstate certain pickets on their application to return to work. The Board's petition for contempt was referred to the Honorable Harry W. Wellford, United States District Judge for the Western District of Tennessee, as Special Master. Judge Wellford heard testimony on all of the issues raised by the Board's contempt petition and in October 1973 and in June 1974 concluded that Rushing was properly discharged, that the pressers were protesting a lawful discharge and therefore had no right to walk out in support of Rushing's discharge, that the other employees who began picketing in support of the discharge of Rushing were engaged in unprotected activity and, accordingly, were not entitled to immediate reinstatement upon their application to return to work.

On May 23, 1975, the United States Court of Appeals for the Sixth Circuit adopted the findings, conclusions and recommendations of Judge Wellford, without modification or change. *NLRB v. Decaturville Sportswear Co.*, 518 F.2d 788 (6th Cir.), *cert. denied*, 423 U.S. 913, 96 S.Ct. 217, 46 L.Ed.2d 141 (1975).

In June 1976, the Regional Director for Region Twenty-six of the Board issued a complaint alleging that Rushing and the pressers at Decaturville had been discharged as a result of an unfair labor practice and that all of the strikers who had walked out of other Marlene plants at Hartsville and Westmoreland, Tennessee, Loris and Aynor, South Carolina, and Frisco City, Alabama, were entitled to immediate reinstatement on their unconditional application to return to work. Responding to this complaint, Marlene and its subsidiaries interposed affirmative defenses of res judicata and collateral estoppel. The Administrative Law Judge to whom this matter was

assigned by the Board, Irwin H. Socoloff, in a decision issued April 7, 1977, concluded that the defenses of res judicata and collateral estoppel were valid; that the Board was attempting to relitigate the identical issues previously heard in the contempt proceeding before Judge Wellford; and that the Board, having already litigated the issues to conclusion, was not at liberty to relitigate the issues a second time. Judge Socoloff recommended that the complaint be dismissed in its entirety.

On September 16, 1977, the Board reversed Judge Socoloff and directed the record to be reopened for the purpose of taking testimony. Marlene and its subsidiaries petitioned the United States Court of Appeals for the Sixth Circuit to review the Board's September 16, 1977 order and to stay the unfair labor practice proceeding. On March 30, 1978, the Sixth Circuit declined to grant that request:

> Upon consideration of the motions and supporting memoranda of the parties, it is the conclusion of the Court that the September 16, 1977 order of the Board is not a final order within the meaning of § 10(f) of the National Labor Relations Act, 29 U.S.C. § 160(f). The Court further finds that upon the conclusion of the administrative hearing and the issuance of a proper order by the Board, the petitioners, if still aggrieved, will be able to seek review in this Court.

*Decaturville Sportswear Co. v. NLRB,* 573 F.2d 929 (6th Cir.), *cert. denied,* 437 U.S. 836, 99 S.Ct. 121, 58 L.Ed.2d 133 (1978).

Judge Lipton began his hearings on August 15, 1978. On August 7, 1979, he issued his decision and found that Rushing's discharge was improper and an unfair labor practice; that the discharge of the pressers was improper because they were engaged in protective concerted activity; that the picketing by pickets at Decaturville and other plants owned by the respondent Marlene was in sympathy with the lawful picketing at Decaturville and, accordingly, were protected concerted activities; and that the respondents violated section 8(a)(1) and (3) of the Act by refusing to reinstate the pickets upon their alleged unconditional offer to return to work. Judge Lipton, however, having heard the evidence, was unable to determine how many of the alleged unfair labor practice strikers were entitled to relief under the Act; accordingly, he deferred to the "compliance stage" the status of 74 of the alleged unfair labor practice strikers.

On September 24, 1979, the General Counsel of the Board, the ILGWU, the charging party, and the respondent, Marlene, all filed exceptions to various portions of Judge Lipton's decision.

The instant petition was filed on October 2, 1979, and I issued a temporary restraining order and order to show cause the same day. A hearing was held and the temporary restraining order was modified on October 3, 1979.

Judge Lipton's decision is not a final order or judgment and does not find that Marlene is indebted to anyone in a specific amount. A reading of that decision does not in any way indicate with any precision the person or persons who may be claimants, the amounts to which they may be entitled, or the set-offs which may be available to Marlene in the course of trying individual claims. Hence, the amount suggested by petitioner as Marlene's probable amount of liability is speculative and entitled to little weight with respect to whether an injunction is merited or just.

Furthermore, the contract for the purchase and sale of assets provides for the assumption of Marlene's obligations and liabilities, "whether accrued, absolute, contingent, or otherwise," with certain exceptions not here applicable. *See* Proxy Statement, at A–2 to A–3. Mr. Herman Greitzer, Unishops' attorney, stated on the record at the hearing on the application for a temporary restraining order that the schedule of possible litigation liabilities furnished to Unishops by Marlene included the NLRB proceedings. Tr. at 47. Moreover, the record here does not indicate that either Marlene or Unishops is in any financial straits despite the fact that Unishops has been in Chapter XI.

726

As a consequence I am being asked to speculate as to what if any success the petitioner will have with respect to the back pay claims and also to speculate as to the viability of Marlene and Unishops an estimated five years down the road. These speculations simply cannot support a finding of the danger of irreparable harm; petitioner has not established that the sale of Marlene's assets and the distribution of the proceeds of that sale to the stockholders of Marlene poses the danger of irreparable injury.

In addition, it would appear to me that the basic issues raised herein were resolved by the Sixth Circuit in its 1975 decision. *See NLRB v. Decaturville Sportswear Co.,* 518 F.2d 788 (6th Cir.), *cert. denied,* 423 U.S. 913, 96 S.Ct. 217, 46 L.Ed.2d 141 (1975). This decision was rendered in connection with a petition to hold respondent in contempt of an earlier order of the Court of Appeals. *See Decaturville Sportswear Co. v. NLRB,* 406 F.2d 886 (6th Cir. 1969). That petition was denied.

I am thus faced with a finding of an Administrative Law Judge to the effect that the discharge of employees was an unfair labor practice and the decision of the Court of Appeals affirming a finding that these discharges were not unlawful. While I would not ordinarily be bound by decisions of another Circuit, it appears to me that I am in these circumstances bound by the decision of the Court of Appeals for the Sixth Circuit that the actions of Marlene in 1970 were not unlawful. For that reason, and since no further review has been had by that Circuit, and because there is no danger of irreparable harm, I find that the issuance of an injunction in this context would not be "just and proper" nor would it protect the public interest. Any injunction, including one issued under the labor laws, restraining a person from the exercise of per-

sonal or property rights is an extraordinary remedy. Under the circumstances of this case, extraordinary relief is unwarranted.[1] The status quo is in my opinion best preserved in this case by leaving the parties as they were found since there has been no demonstration of irreparable injury.

No injunction is necessary to prevent the frustration of the basic remedial purpose of the Act and consequently no reasonable cause exists to believe that the public interest will be adversely affected. The temporary injunction is dissolved and the petition is dismissed.

SO ORDERED.

---

1. I do not doubt that this court has jurisdiction to issue an injunction under the cited statute if the petitioner shows irreparable injury and that such an order would be just and proper. Contrary to petitioner's memorandum of law (page 4) I am not here presented with a question of preserving the court's jurisdiction or protecting

and effectuating a decree of this court, much less that of a Court of Appeals. I disagree that this is a case cognizable under the All Writs Act, 28 U.S.C. § 1651, since my power under 160(j) is sufficient for purposes of this application.